UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,          CASE NO: 8:02-Cr-297-T-26TGW

          Plaintiff,

VS.                                Tampa, Florida
                                   October 9, 2002
DONALD JOE MCKINNEY,               3:00 p.m..

          Defendant.
_____/


TRANSCRIPT OF PLEA PROCEEDINGS
BEFORE THE HONORABLE RICHARD A. LAZZARA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

Counsel for Plaintiff:     MS. COLLEEN MURPHY
                           U. S. Attorney's Office
                           400 N. Tampa Street
                           Suite 3200
                           Tampa, Florida  33602
                           813-274-6000

Counsel for Defendant:     NICHOLAS MATASSINI, ESQUIRE



Court Reporter:            CLAUDIA SPANGLER-FRY, RPR, CM
                           Official Court Reporter
                           801 North Florida Avenue
                           Room 1548
                           Tampa, Florida  33602
                           813-301-5575

# P R O C E E D I N G S

October 9, 2002

\* \* \* \* \* \*

THE COURT:  All right, Madam Clerk, would you please call the case.

THE CLERK:  Case Number 8:02-Civil-297-T-26TGW, United States of America versus Donald Joe McKinney.

Counsel, state your appearances, please.

MS. MURPHY:  Colleen Murphy for the United States.  Good afternoon.

THE COURT:  Good afternoon.

DEFENSE ATTORNEY:  Nicholas Matassini for the Defendant.  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

Would everybody come forward, please.

I appreciate the Marshal accommodating us on such short notice so we can take this plea.

Madam Clerk, would you please swear the Defendant.

Thereupon,

**DONALD JOE MCKINNEY,**

having first been duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

THE DEFENDANT:  I do.

THE COURT:  You are Donald Joe McKinney?

1          *THE DEFENDANT:  Yes, sir.*

2          *THE COURT:  Mr. McKinney, it's my understanding*

3    *that you're appearing before me this afternoon to change*

4    *your pleas of not guilty to counts one and two of the*

5    *Indictment to those of guilty and that's pursuant to a*

6    *written plea agreement, is that correct, sir?*

7          *THE DEFENDANT:  Yes, sir.*

8          *THE COURT:  Okay.  You need to understand that*

9    *during the course of this proceeding, as I'm sure*

10   *Mr. Matassini has advised you, I will be asking you some*

11   *very specific questions, the answers to which will have an*

12   *influence on the ultimate decision I must make, that is,*

13   *whether I, in fact, will accept your pleas of guilty*

14   *pursuant to the plea agreement.*

15         *You need to understand that if you're not truthful*

16   *in answering my questions or should anybody else ask a*

17   *question during the course of this proceeding and you're not*

18   *truthful in answering these questions, you'd be committing*

19   *the separate crime of perjury for which you could be*

20   *indicted, prosecuted, convicted and sentenced.  Do you*

21   *understand that?*

22         *THE DEFENDANT:  Yes, sir.*

23         *THE COURT:  Do I have your assurance that any*

24   *question posed to you will be answered by you truthfully and*

25   *completely?*

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  It's very important, Mr. McKinney,

3     that you and I communicate during the course of this

4     proceeding, and that you understand not only my questions or

5     any other question that is asked of you, but generally what

6     is taking place during the course of this proceeding.  I

7     want your assurance that if at any time you do not

8     understand what is taking place here, what is being said to

9     you, the question that's being asked of you, that you will

10    stop me and let me know that fact.  Do I have that

11    assurance?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Additionally, Mr. Matassini has been

14    representing you in this case.  And I'm sure he's met with

15    you and counseled with you and given you advice with regard

16    to certain issues.  I want to advise you that you continue

17    to have the right to consult with Mr. Matassini so that if

18    during the course of this proceeding you feel a need to

19    speak with him about any issue, all you need do is let me

20    know that fact and I'll let you consult with him.

21    Understand that?

22          THE DEFENDANT: Yes, sir.

23          THE COURT:  Now, don't think that you're going to

24    make me mad or make me upset because we have to delay the

25    proceedings, you won't do that.  I want to make sure that

1  you have had sufficient time to consult with Mr. Matassini

2  about what's taking place here today, and I want to make

3  sure that you understand what is taking place.  All you have

4  to do is say, Judge Lazzara, listen, I have a question, I

5  don't understand something or I need to speak with

6  Mr. Matassini, we'll stop and you can confer with him.  Fair

7  enough?

8  THE DEFENDANT:  Yes, sir.

9  THE COURT:  Okay.  Now, what is your full name,

10  sir?

11  THE DEFENDANT:  Donald Joe McKinney.

12  THE COURT:  Is that your true name?

13  THE DEFENDANT:  Yes, sir.

14  THE COURT:  How old are you, sir?

15  THE DEFENDANT:  45.

16  THE COURT:  How far did you go in school?

17  THE DEFENDANT:  I have a college education, four

18  year degree.

19  THE COURT:  Where did you graduate from college?

20  THE DEFENDANT: From the University of North

21  Alabama in 1979, with a baccalaureate degree in nursing.

22  THE COURT:  I take it you read, write and

23  understand the English language?

24  THE DEFENDANT: Yes, sir.

25  THE COURT:  And what is your -- are you a nurse by

1    profession?

2              THE DEFENDANT:  I have been.

3              THE COURT:  What have you -- what is your general

4    occupation, profession?

5              THE DEFENDANT:  Been a basic administrator.

6              THE COURT:  How long have you done that?

7              THE DEFENDANT:  About maybe six or seven years.

8              THE COURT:  You married?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Children?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Are you still with your wife; you

13   still married to your wife?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Where do you live anyway?

16             THE DEFENDANT:  In Atlanta, Georgia.

17             THE COURT:  Okay.

18             THE DEFENDANT:  Actually in a town called Smyrna,

19   a suburb of Atlanta.

20             THE COURT:  Have you ever been treated for any

21   type of mental illness or addiction to narcotic drugs of any

22   kind?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  Although I know you're in custody, I

25   still need to ask this of you.  As you stand there, are you

1  currently, and by that I mean, you're obviously -- your

2  ability to have access to drugs, narcotics, alcohol is very

3  limited or at least it should be, but as you stand there,

4  are you currently under the influence of any type of drug,

5  medication, or alcoholic beverage of any kind?

6  THE DEFENDANT: I am taking medication.

7  THE COURT: What are you taking, sir.

8  THE DEFENDANT: Pamelor.

9  THE COURT: What is that?

10  THE DEFENDANT: Anti-depressant.

11  THE COURT: How long have you been taking that?

12  THE DEFENDANT: A week or two. It started only a

13  week or two ago?

14  THE COURT: Before that, did you have any bouts of

15  depression? I mean, we all have bouts of depression, I get

16  depressed, everybody gets depressed.

17  THE DEFENDANT: No, sir, I've been suffering from

18  severe depression for over a year now.

19  THE COURT: Okay.

20  (Defendant crying.)

21  Did the doctor at the jail prescribe this for you?

22  THE DEFENDANT: Yes, sir.

23  THE COURT: When did you take that medication,

24  sir?

25  THE DEFENDANT: This morning around 10:00 o'clock.

1    THE COURT:  Okay.  Is it -- is the effect of the

2    medication such that it's clouding your ability to

3    understand what is taking place here or your judgment or

4    anything like that?

5    THE DEFENDANT:  No, sir, I don't believe.

6    THE COURT:  Do you know what you are about to do?

7    THE DEFENDANT: Yes.

8    THE COURT:  Where are you and what are you about

9    to do?

10   THE DEFENDANT:  I'm in a Court of Law about to

11   change my plea to guilty.

12   THE COURT:  Okay.  By the way, I take it you're a

13   United States citizen?

14   THE DEFENDANT:  Yes, sir.

15   THE COURT:  'Cause if you're not, there's a

16   collateral consequence if you're an alien, you're

17   deportable, and I want to make sure you're a citizen.

18   Now, who is the -- is this the original plea

19   agreement?  Okay, just filed in open Court, it hasn't been

20   given a docket number, however, this is a document that

21   purports to be your plea agreement, it's a 14 page document.

22   On the first 13 pages, there's -- at the bottom left hand

23   page of each page is a place for initials where I see the

24   initials D.J.M., and the last page is a signature page where

25   I see a signature purporting to be yours, Donald Joe

1    McKinney, Mr. Matassini's Ms. Murphy's and Mr. Monk.

2         All right, Madam Clerk, hand him the original plea

3    agreement.  I want you to take a look at that plea agreement

4    and I want to verify that those are your initials on the

5    first 13 pages and that's your signature on the last page.

6         MR. MATASSINI:  Judge, so the record is clear,

7    there was another plea agreement filed a week or two ago.

8    This probably ought to be considered as a superseding plea

9    agreement, if you will.

10        THE COURT:  Right.  This is the one that we'll be

11   traveling on, assuming I accept the plea.

12        By the way, what was the problem that Judge Wilson

13   found?

14        MS. MURPHY:  We had down two pleas at the time,

15   one was traveler based elements and the two got mixed up.

16   Originally, Mr. Matassini had also gotten the other person's

17   plea agreement, we had noticed the elements were traveling

18   and not persuasion.

19        THE COURT:  All right.  This is your plea

20   agreement?

21        THE DEFENDANT: Yes, sir.

22        THE COURT:  Do you have a copy in front of you

23   there?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  Okay.  Now, have you had sufficient

1   time to sit down with Mr. Matassini and to discuss with him

2   thoroughly and completely this plea agreement?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Do you need anymore time to discuss

5   this agreement with him whatsoever?

6            THE DEFENDANT:  No, sir.

7            THE COURT:  Are you telling me under oath,

8   therefore, that you fully understand the provisions of this

9   agreement, how they impact on you and what your rights and

10  responsibilities are under it?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Okay.  Now, of course, in this

13  agreement, there are certain representations made by the

14  Government such as they will not oppose your request that

15  you receive a three level downward adjustment for acceptance

16  of responsibility, okay.  I want you to understand that it

17  will ultimately be up to me to determine whether you receive

18  that.  You understand?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  All right.  This is not binding on me.

21  You understand that, that particular provision?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  There's also a -- is there a low end

24  provision?

25           MS. MURPHY:  No, Judge.

1    THE COURT: Okay, all right. Generally, there's a

2    low end provision, it's not here. You understand what a low

3    end provision is?

4    THE DEFENDANT: No, sir.

5    THE COURT: Well, I'm going to talk about the

6    guidelines in a minute, but there is a guideline range that

7    goes from say 10 months to 100 months, all right. Generally

8    sometimes, there's plea agreements which talk about a low

9    end provision where the Government doesn't object to the

10   Court giving you the low end of the guidelines. That's not

11   in here. You understand that?

12   THE DEFENDANT: Okay. Explain it to me a little

13   further, sir.

14   THE COURT: All right. In some plea agreements,

15   not in all plea agreements, some of the Assistant United

16   States Attorneys don't have a problem with the low end

17   provision, other Assistants don't put it in the plea

18   agreements. What a low end provision means is that at the

19   time of sentencing, the United States will not oppose your

20   request that you be sentenced at the very bottom of the

21   guideline range. Understand that? That's not in your plea

22   agreement, you understand that?

23   THE DEFENDANT: Okay, okay.

24   MR. MATASSINI: Judge, I did explain to him just

25   'cause I think the confusion is, in his mind, they're not

1    making any recommendation as to sentencing in this plea

2    agreement.  And he's been told that we certainly seek the

3    low end sentence and they're not going to make any

4    recommendation at all.

5         THE COURT:  All right, but -- and we're going to

6    get into that.  Ultimately, I will make that decision.

7         THE DEFENDANT: Yes, sir.

8         THE COURT:  Is there a waiver of appeal provision

9    in here?

10        MS. MURPHY:  There is, Judge.

11        THE COURT:  Okay, okay.  On page 10, paragraph

12   five, appeal of sentence waiver.  Basically, what this says,

13   Mr. McKinney, and I want counsel to correct me if I misstate

14   this because it's very important, that is, while you're

15   acknowledging that I'm going to sentence you in conformancy

16   with basically the law and sentencing guidelines and I'll

17   tell you about the guidelines in a minute, I am sure

18   Mr. Matassini has explored them with you and that you're

19   aware that any sentence I give you does not provide for

20   parole.  We don't have parole anymore in the Federal system.

21   Used to be, someone would get five years, Mr. Matassini will

22   tell you this because he and I used to practice before the

23   guidelines, you'd have an expectation of parole, sometimes

24   as soon as you hit the prison system.  We don't have that

25   anymore.  Any sentence I give you, if it's a prison

1  sentence, I'm going to tell you you're going to do 85

2  percent of that sentence, assuming you do well in the

3  institution, and then you're going to be put on supervised

4  release.  So there is no parole.  You understand that?

5         THE DEFENDANT:  Yes, sir.

6         THE COURT:  Okay.  This provision goes on to say

7  that, you know, you acknowledge I have jurisdiction to

8  impose any sentence up to the statutory maximum and

9  expressly waive your right to appeal any sentence I impose

10  on you, except under the following circumstances:

11         If I give you an upward departure, meaning you

12  know, say the high end of your guideline range is -- this is

13  just a figure -- 50 months, and I say, nope, I'm going to go

14  beyond that guideline range, I'm going to give you 60

15  months, that's an upward departure.  If I do that, you can

16  appeal me, okay.  If the Government appeals my sentence,

17  then you can also appeal, or if I give you a sentence above

18  the statutory maximum, which I do not intend to do, or a

19  sentence in violation of the law apart from the sentencing

20  guidelines, meaning I give you an illegal sentence, which I

21  don't intend to do, all right, only under those

22  circumstances will you have the right to appeal, otherwise,

23  if I stay within the guideline range that I ultimately

24  determine applies to you, you can't appeal that.  You

25  understand?  That's a very important right you're giving up.

1  You understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Okay.  Now, obviously this plea

4  agreement is an inducement to make you plead guilty and

5  there's nothing wrong with that.  The law provides for plea

6  agreements.  But I want you to set aside this plea agreement

7  and any inducement it may have had on you to make you come

8  in here and plead guilty.  Aside from that plea agreement,

9  has anyone, and when I use the word "anyone", I mean just

10  that, anyone; not just Ms. Murphy or anyone connected with

11  the Government or Mr. Matassini, but has anyone at any time

12  promised you anything to make you come in here and plead

13  guilty?

14          THE DEFENDANT: No, sir.

15          THE COURT:  Has any anyone threatened you in any

16  manner or coerced you in any manner to make you come in here

17  and plead guilty?

18          THE DEFENDANT:  No, sir.

19          THE COURT:  Has anyone made you a specific promise

20  with regard to what sentence I would impose upon you?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  Has anyone made you any promises

23  regarding -- assuming I give you time in prison, has anyone

24  made you any promises with regard to how much time you will

25  actually have to serve?

1          THE DEFENDANT: No promises, sir.

2          THE COURT:  Okay.  Now, before coming here today,

3     Mr. McKinney, have you had an opportunity to sit down with

4     Mr. Matassini and to review and to discuss with him in

5     detail the copy of the Indictment which was returned against

6     you by the Federal Grand Jury in this case?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Okay.  Did you also have enough time

9     to sit down and discuss with him not only the charges, but

10    the case in general, any discovery that may have been given

11    to him by the Government, any possible defenses you may have

12    in the case in general?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Are you fully and completely satisfied

15    with the advice and counsel that Mr. Matassini has given

16    you?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Has he failed to do anything that you

19    asked have him?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  Okay.  Can you think of anything he

22    should have done that he didn't do?

23         THE DEFENDANT:  No, sir.

24         THE COURT:  Okay.  Now, have you ever been

25    convicted of a felony?

1    THE DEFENDANT: No, sir.

2    THE COURT: Ever been in jail before?

3    THE DEFENDANT: I was arrested once in 1980, I

4    entered a plea of not guilty, the charges were dropped.

5    That was the only incident.

6    THE COURT: Okay. Spend anytime in jail on that

7    occasion?

8    THE DEFENDANT: No, sir.

9    THE COURT: This is your first real taste of

10   incarceration?

11   THE DEFENDANT: Yes, sir.

12   THE COURT: And obviously, you're not a convicted

13   felon. I need to advise you that you're pleading guilty to

14   felonies and if I accept your pleas, I'm going to adjudicate

15   you guilty. And that will then deprive you of the following

16   very valuable civil rights; your right to vote, your right

17   to hold public office, if that was ever your dream, your

18   right to serve on a jury and the right to possess any kind

19   of a firearm. Do you understand that?

20   THE DEFENDANT: Yes, sir.

21   MR. MATASSINI: Judge, with respect to that last

22   issue about the 1980 case, he indicated that it was dropped,

23   in effect, legally it was dismissed, but it was after

24   completion of a deferred prosecution program. I just want

25   to make that clear.

1      THE COURT: Okay. What kind of offense was it?

2   That's not -- not going to be scoreable.

3      MR. MATASSINI: It's not scoreable; a lewd and

4   lascivious offense.

5      THE COURT: Okay. Now, it's my understanding that

6   count one carries a maximum sentence of not more than 15

7   years imprisonment, a fine $250,000, a term of supervised

8   release of three years and a $100 special assessment which

9   is due on the date of sentencing. Count two carries a

10  maximum sentence of up to five years imprisonment, a term of

11  supervised release of up to three years, a fine of up to

12  $250,000 and a special assessment of $100, again which is

13  due at sentencing. Is there -- there's no restitution due

14  in this case, is there?

15      MS. MURPHY: No, Judge.

16      THE COURT: Is that what your understanding of

17  what the maximum penalties are as provided by law?

18      THE DEFENDANT: Yes, sir.

19      THE COURT: Now, I talked to you about the

20  sentencing guidelines. Under the Federal Criminal Justice

21  System we have a sentencing commission that issues

22  guidelines periodically for Federal Judges like me to use in

23  terming sentences in Federal criminal cases like yours.

24  Have you had enough time to sit down with Mr. Matassini and

25  discuss with him how the guidelines might impact on you in

1   this case?

2             THE DEFENDANT:  Yes, sir.

3             THE COURT:  Has he given you a range?

4             THE DEFENDANT:  We discussed it.

5             THE COURT:  Okay.  I want you to understand

6   there's nothing wrong with that, but what he's given you is

7   nothing more than a good faith estimate of where you will

8   fall in the guidelines based on all information known to

9   him.  All right.  Because here's the process we're going to

10  follow before we know where you fall within the guidelines.

11  If I accept your pleas today, I'll defer you for sentencing.

12  I will direct the United States Probation Office to conduct

13  a Pre-Sentence Report, and they'll do an investigation into

14  your background, into the background of this case, the

15  factual background, and put together a Pre-Sentence Report.

16  They'll meet with you and your attorney and Ms. Murphy and

17  the case agent and they'll compile this report.  They'll

18  disclose it to you.  You'll have an opportunity to make

19  objections, as will the Government.  Everybody will try to

20  work together to work out those objections.  If they're

21  worked out, you know, I'll get the file before your

22  sentencing, I'll review it to make sure I'm satisfied

23  everything has been done according to the law.  Okay.  And

24  we'll come in here on your day of sentencing and then we'll

25  know what your guideline range is.

1      If, however, you can't resolve any objections that

2   you may have or the Government has some unresolved

3   objections, on your day of sentencing, we'll have a

4   sentencing hearing and I will hear arguments and I will

5   either sustain the objections or overrule the objections,

6   all right, and then we'll know where you stand.  So, the

7   guidelines -- but it's only after we go through that

8   process, Mr. McKinney, will we know where you stand on the

9   guidelines.

10      Mr. Matassini may have been a little high, may

11   have been a little low, may have been right on the mark.

12   But you need to understand that what he's given you is not

13   binding on me.  It's just a good faith estimate.  You know,

14   a lot of times it happens that certain information comes up

15   that a Defendant has not been candid about with his or her

16   attorney, and you know, the Probation Office puts it in the

17   report and it doesn't work to the benefit of the Defendant,

18   all right.  So, I'm assuming that you have been truthful and

19   candid with Mr. Matassini with regard to your background and

20   everything, correct?

21      THE DEFENDANT:  Yes, sir.

22      THE COURT:  But in any event, the bottom line is,

23   we're going to have to go through this entire possess before

24   we'll know what your guideline range is, and then, under

25   limited circumstances, I have some discretion either to give

1   you a sentence below the guidelines, and I have a feeling

2   that's what you're going to be asking me here, right?

3   Correct, Mr. Matassini?

4           MR. MATASSINI:  Yes.

5           THE COURT:  In fact, I want you to remind me

6   because I want to make sure we set aside enough time because

7   I've been involved in some of these cases a lot of times

8   that there is psychiatric or psychological testimony.  I

9   don't want to be rushing.  So, I can go below the guidelines

10  or I can exceed the guidelines.  You understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  By pleading guilty, Mr. McKinney, you

13  will be giving up some very valuable legal and

14  Constitutional Rights.  I know that Mr. Matassini has

15  explained them to you.  I now must, however, explain them to

16  you.

17          You will be -- by pleading guilty, you will give

18  up your right to a trial by jury.  You will give up your

19  right to be represented by counsel of your choice, that is,

20  Mr. Matassini at that trial.  You will be giving up your

21  right to require Ms. Murphy on behalf of the Government to

22  prove your guilt to that jury beyond a reasonable doubt.

23  And before they can find you guilty beyond a reasonable

24  doubt, all 12 of them must be in agreement.  It must be a

25  unanimous verdict.  You understand that?

| | |
|---|---|
| 1 | THE DEFENDANT: Yes, sir. |
| 2 | THE COURT: You will also be giving up your right |
| 3 | to sit over there at counsel table and to, as we say, |
| 4 | confront and cross-examine the witnesses who are accusing |
| 5 | you of this crime, through Mr. Matassini. You'll also be |
| 6 | giving up your right, if you so desire, to put on a defense, |
| 7 | to call your own witnesses, to put on your own evidence, to |
| 8 | even take the stand, if you so desire. But I tell you this, |
| 9 | if you decided to go to trial and you decided not to put on |
| 10 | any evidence or testimony or not to take the stand, I would |
| 11 | emphasize and tell that jury like I always do that they |
| 12 | could not use that against you in determining whether you're |
| 13 | guilt or not guilty. They would have to look to the |
| 14 | Government's proof, okay. So you understand by pleading |
| 15 | guilty, you're giving up all those rights? |
| 16 | THE DEFENDANT: Yes, sir. |
| 17 | THE COURT: Okay. Simply because there's no need |
| 18 | for a trial because you're here admitting your guilt. |
| 19 | Now, count one of this Indictment charges that |
| 20 | from in or about March of 2002, through on or about June 6th |
| 21 | of 2002, in the Middle District of Florida, and elsewhere, |
| 22 | that you, Donald Joe McKinney, also known as Joe and also |
| 23 | known as Dracon 20, I assume that was his Internet name or |
| 24 | computer name, okay, did knowingly attempt to persuade, |
| 25 | induce and entice and coerce and persuade, induce and entice |

CLAUDIA SPANGLER-FRY, OFFICIAL U. S. COURT REPORTER

1  and coerce an individual under 18 years of age to engage in

2  a sexual act for which any person can be charged with a

3  criminal offense by using a facility and means of interstate

4  commerce, that is, a computer, with access to the Internet

5  and that is a violation of Title 18 of the United States

6  Code, Section 2422(b). That's count one.

7       Count two says that on or about June 6th of 2002

8  in the Middle District of Florida, and elsewhere, again,

9  you, the Defendant, did knowingly possess material

10  containing images of child pornography, that is, visual

11  depictions -- shouldn't it be actual?

12       MS. MURPHY: No, as long as it appears to be

13  language, is not crude.

14       THE COURT: Okay, visual depictions of minors

15  engaged in sexually explicit conduct which had been mailed,

16  shipped and transported in interstate and foreign commerce

17  and which had been produced using materials, that is, a Dell

18  Model computer, serial 8DSXYO1 with a Hatachi hard drive,

19  serial number CV5CKKX, mailed, shipped and transported in

20  interstate and foreign commerce which is a violation of

21  Title 18 of the United States Code, sections 2252(a)(a)5(b),

22  and 2.

23       It's what the Grand Jury has charged you with

24  doing. Now, if this case were to go to trial, Ms. Murphy,

25  on behalf of the Government, in order to proof those

1　charges, would have to convince a jury or prove the

2　following two elements to a jury's satisfaction beyond a

3　reasonable doubt:

4　　　　　As to count one, first, that you knowingly

5　attempted to persuade, induce and coerce an individual under

6　the age of 18 years to engage in a sexual act, and second,

7　that you used a facility and means of interstate commerce to

8　commit that offense.

9　　　　　As to count two, she would have to prove to the

10　jury's satisfaction beyond a reasonable doubt, first, that

11　you knowingly possessed a book, magazine, periodical, film,

12　videotape, computer disk or any other material; second, that

13　said material contained the image of child pornography,

14　third, that the Defendant knew that the material contained

15　an image of child pornography, and fourth, that the image of

16　child pornography was mailed, shipped or transported in

17　interstate or foreign commerce by any means including by

18　computer or that the image was produced using materials that

19　had been mailed, shipped or transported in interstate or

20　foreign commerce by any means including by computer.

21　　　　　You understand what you're charged with doing and

22　what the Government would be required to prove beyond a

23　reasonable doubt?

24　　　　　THE DEFENDANT:　Yes, sir.

25　　　　　THE COURT:　How do you wish to plead to those

1    charges?

2         THE DEFENDANT:  I wish to plead guilty, sir.

3         THE COURT: Are you pleading guilty because you are

4    in fact guilty of committing these offenses?

5         THE DEFENDANT:  Yes, sir.

6         THE COURT:  Now, go to pages 12, 13 -- 12 and 13

7    of your plea agreement.  That is the factual basis there.  I

8    want you to read it and I'm going to read it again myself.

9         (Brief Pause.)

10        Is that what you did?

11        THE DEFENDANT: Yes, sir.

12        THE COURT:  You dispute those facts at all?

13        THE DEFENDANT:  No, sir.

14        THE COURT:  Okay.  Now, I asked Ms. -- well, I

15   didn't ask her, I had my judicial assistant to call

16   Ms. Murphy prior to the sentencing hearing 'cause I wanted

17   her to bring the photographs, and I did that for a reason.

18   There's a recent opinion out there, _United States versus_

19   _Richardson_, it hasn't even been given a Fed. 3rd cite, 2002

20   WL2012676, decided September 4, 2002.  This conviction

21   occurred before the ink was dry on the Free Speech coalition

22   case, but the Judge that did that case basically said, no

23   harm, no foul, we've looked at the pictures and those are

24   pictures of actual children.  Here's what they said.  We

25   have examined the images shown to the jury.  The children

1   depicted in those images were real, of that we have no doubt

2   whatsoever.

3           So, I have reviewed -- the reason I did this is

4   because I have a 2255 in front of me which Ms. Lopez is

5   handling where that man was convicted prior to that or by

6   plea prior to that free speech coalition case.  I directed

7   her to file in the record the pictures so I now can look at

8   them in light of <u>Richardson</u>.

9           MS. MURPHY:  I'm the one that tried <u>Richardson</u> in

10  Fort Myers.  We didn't have an expert, the Judge just looked

11  at them himself and the jurors looked at them.

12          THE COURT:  You're right, it was Judge Steele.

13          MS. MURPHY:  Right.

14          THE COURT:  Okay, all right.  I want you to look

15  at them.  These are real kids and this is real pornography.

16          MR. MATASSINI:  Judge, I have looked at those

17  photographs, Mr. McKinney has not.

18          THE COURT:  Have you looked at these?

19          MR. MATASSINI:  No, they have been in the custody

20  of the agent at all times and I have not been given a copy

21  to take to show to him, but I have looked at them at the FBI

22  office and I'm convinced in my own mind they're, in fact,

23  real children and I have been advised that they have been

24  identified -- several of them have been -- actually been

25  identified by agents.

1          THE COURT: Mr. McKinney, Ms. Murphy is going to

2 show you those. I want you to thumb through those pictures.

3          THE DEFENDANT: I would prefer not to.

4          THE COURT: Okay. So you don't -- those are the

5 -- they were downloaded from his harddrive?

6          MS. MURPHY: That's correct, Judge.

7          THE COURT: All right. Is that the agent there

8 who did it?

9          MS. MURPHY: It is.

10          THE COURT: I want to be clear on this. I don't

11 want to get another 2255. So you don't contest those are

12 the photographs on that? I'm sorry, may we have your name,

13 please.

14          THE AGENT: Phillip Dubord.

15          THE COURT: And you're with what agency?

16          THE AGENT: Task force agent with the FBI. I'm a

17 detective with the Hillsborough County Sheriff's Office.

18          THE COURT: Okay. Detective, you're the case

19 agent in this case?

20          THE AGENT: Yes, sir.

21          THE COURT: Did you personally download those

22 photographs from his harddrive?

23          THE AGENT: I copied these photographs off of a

24 forensic disk that was provided to me from the Florida

25 Department of Law Enforcement.

1      THE COURT:   That came from his harddrive.   You

2  don't contest that?

3      MR. MATASSINI:   Let me ask him to look at them

4  quickly to make sure there's no doubt in his mind these came

5  from his hard drive.

6      THE COURT:   Are those the pictures that came from

7  your harddrive.

8      THE DEFENDANT:   Yes, sir, I'm afraid so.

9      THE COURT:   Okay.   How long do you maintain

10  custody of those?

11      MS. MURPHY:   Usually until I believe after the --

12  there's no chance of appeal, once the time period --

13      THE COURT:   2255 period, all that?

14      MS. MURPHY:   Actually, we had been -- I think I

15  did send an e-mail over to the FBI a little while ago and

16  had them do that.

17      THE COURT:   Should I make those part of the

18  record, seal them?

19      MS. MURPHY:   Do you have a problem with that?

20      THE AGENT: No, I have a digital.

21      THE COURT: Madam Clerk, those are to be sealed.

22      THE AGENT:   These tabs here that I have tabbed

23  actually identified the children.

24      THE COURT: You have?

25      THE AGENT:   Yes, sir, we have.   Actually, law

1   enforcement actually came in contact with these children.

2   May have been several years ago, they have actually been

3   identified, so we actually have identified children.

4            MS. MURPHY:  Do you want to explain to him the

5   disk?  We now have a disk we maintain of all prior pictures

6   that we have of children that were involved in molestation

7   cases.  What the FBI has done is compiled the disk, sent it

8   out to the different innocent images task force, when they

9   get the child porn from the computer, compare it to this

10  disk, see if they have identifiable minors.  We did that

11  free speech prior to the _Richardson_ case coming out.  We're

12  still identifying kids and that's how we do that.

13           THE COURT: Do we know where these kids are now?

14           THE AGENT:  No, sir.  THEY are in the country and

15  also IN Europe.  We had three, positively identified three

16  of the children in here via the data base.

17           THE COURT:  Okay.  Thank you, Detective.

18           Mr. McKinney, we've been here for a while.  You

19  still wish to persist in your pleas of guilty?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Mr. Matassini, do you wish to make --

22  wish of me to make any further inquiry of your client?

23           MR. MATASSINI: No, Your Honor.

24           THE COURT:  Ms. Murphy?

25           MS. MURPHY:  No, Your Honor, thank you.

1    THE COURT:  Okay.  All right.  You have any

2    questions before we close this proceeding, Mr. McKinney?

3                THE DEFENDANT:  No, sir.

4                THE COURT:  I will find that the Defendant, Donald

5    Joe McKinney has freely, intelligently and voluntarily

6    entered his pleas of guilty to counts one and two of the

7    Indictment pursuant to the plea agreement, with full

8    knowledge of the nature of the offenses to which he's

9    pleading and the consequence of his pleas of guilty,

10   including the range of penalties that may be imposed and the

11   various rights he's giving up.

12                I further find, based on my review of the

13   photographs that are now -- we'll make it Court's 1, Madam

14   Clerk, which will be sealed until further order of the

15   Court.  Based on the factual basis set forth in the plea

16   agreement, there's more than an adequate factual basis to

17   support the pleas of guilty.  I will accept the pleas of

18   guilty, adjudge him to be guilty of the offenses charged in

19   counts one and two.  I will direct the United States

20   Probation Office to conduct a Pre-Sentence Report and I will

21   continue to remand him to the custody of the United States

22   Marshal Service pending sentencing.

23                THE CLERK:  January 3rd, 2003, 9:30.

24                THE COURT:  I'm sorry, February 3rd?

25                THE CLERK:  January 3rd.

1          THE COURT:  January 3rd, 9:30.

2          Everybody be here?  It's right after the holidays

3    and some people go out on vacation.  We have anything else

4    set that day?

5          THE CLERK: Yes, sir, at 9:00 o'clock.

6          THE COURT:  Okay.  Mr. Matassini, how long do you

7    think sentencing will take?

8          MR. MATASSINI:  It's going to be hard to say,

9    Judge.  It's going to depend on the Pre-Sentence Report of

10   which I could give you a better answer depending on whether

11   there's aggravating factors in there, that sort of thing.  I

12   would suspect an hour.

13         THE COURT:  All right.

14         MR. MATASSINI:  Unless there's going to be

15   testimony.

16         THE COURT:  Excuse me?

17         MR. MATASSINI:  Unless there's going to be

18   testimony.

19         THE COURT:  All right.  Rita, block off the rest

20   of the morning, don't set anything else.

21         THE CLERK:  Yes, sir.

22         THE COURT:  That way, it will give us -- okay -- I

23   assume -- you all right?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Were you living here in Tampa, cause

1    the factual basis said you have an apartment here in Tampa.

2           THE DEFENDANT:  Yes, sir, I was working a contract

3    position.  My actual residence is in Smyrna, Georgia, is

4    where my wife is.  I was down here by myself for a long

5    period of time working a contract job.

6           THE COURT:  I assume your wife and children know

7    where you are?

8           THE DEFENDANT: Yes, sir.

9           THE COURT:  How old are your children?

10          THE DEFENDANT:  Well, the children are actually

11   from a previous marriage, they're 21 and 18.

12          THE COURT:  Okay.  All right.  Anything else?

13          MS. MURPHY:  No, Your Honor.

14          MR. MATASSINI:  No, Judge.

15          THE COURT:  All right, thank you, I'll see you

16   January 3rd, Mr. McKinney.

17          THE DEFENDANT: Yes, sir.

18          MR. MATASSINI:  Thank you, Your Honor.

19          (Thereupon, the proceedings were concluded.)

20                         ******

21

22

23

24

25

<u>CERTIFICATE</u>

STATE OF FLORIDA            )
                                                    SS
COUNTY OF HILLSBOROUGH     )


        I, CLAUDIA SPANGLER-FRY, Official Court Reporter

for the United States District Court, Middle District,

Tampa, Division,

        DO HEREBY CERTIFY, that I was authorized to and

did, through use of Computer Aided Transcription, report in

shorthand the proceedings and evidence in the above-styled

cause, as stated in the caption hereto, and that the

foregoing pages numbered 1 to 32, inclusive, constitute a

true and correct transcription of my shorthand report of

said proceedings and evidence.

        IN WITNESS WHEREOF, I have hereunto set my hand

in the City of Tampa, County of Hillsborough, State of

Florida, this 22nd day of October, 2002.


        CLAUDIA SPANGLER-FRY, Official Court Reporter



By_____


Claudia Spangler-Fry
MY COMMISSION # DD108874 EXPIRES
August 13, 2006
BONDED THRU TROY FAIN INSURANCE INC

CLAUDIA SPANGLER-FRY, OFFICIAL U. S. COURT REPORTER